[No. 29456. Department One. April 13, 1945.]

*In the Matter of the Appeal of* TOM COPPAGE, *Appellant,*
v. E. B. RILEY, *as Commissioner of Unemployment
Compensation and Placement, Respondent.*[1]

*Lynwood Fix,* for appellant.

*The Attorney General* and *George W. Wilkins, Assistant,*
for respondent.

MILLARD, J.—On the ground that certain real estate sales-
men were performing services for Tom Coppage, a licensed
real estate broker in the city of Seattle, which constituted
"employment" under the unemployment compensation stat-
ute, payment was demanded by the commissioner of unem-
ployment compensation and placement of alleged delinquent
assessments. Hearing before the division of unemployment
compensation and placement and review by the appeal tri-

[1]Reported in 157 P. (2d) 977.

803

bunal of the division resulted in findings that the salesmen performed services for Tom Coppage for "wages" within the meaning of the unemployment compensation act which constituted "employment" subject to the unemployment compensation act in view of the petitioner's failure to show exemption under the exception tests of subdivisions (i), (ii), and (iii) of § 19 (g) (5), Laws of 1937, chapter 162, p. 574, as amended (Rem. Rev. Stat. (Sup.), § 9998-119 (g) (5) [P. C. § 6233-317]), and that petitioner was therefore liable for the contributions assessed. Appeal to the superior court for King county resulted in entry of a judgment affirming the decision of the commissioner and awarding recovery of contributions, with interest thereon, claimed to be due by the commissioner from the real estate broker. This appeal followed.

Appellant is a licensed real estate broker in Seattle and has been in such business since 1927. His principal business is that of selling real estate. The business of selling real estate was handled by licensed real estate salesmen working out of appellant's office under an arrangement whereby the salesmen divided any commissions that they were instrumental in earning, one half to the salesman and one half to appellant. The only control appellant has over these salesmen is the right to decide whether they may work for him; that is, he has the right to discontinue their association with him as salesmen. Appellant has nine desks in his office for the salesmen, six of which are now occupied. In addition to furnishing the salesmen with desks in his office, appellant also supplied the salesmen with telephone switchboard services and operates extensions to the salesmen's desks from the one telephone listed for appellant's office. Appellant also supplies the salesmen with stationery, with stenographic service, and calling cards bearing the appellant's firm name and the individual salesman's name.

The activities of the salesmen consisted in listing homes for sale and with showing and selling real estate from listings turned in to appellant's office. The salesmen are required to have salesmen's licenses issued by the state

department of licenses. Listings from which sales were made were obtained from the owner of the property in writing when possible, in order that the commission from the sale might be more easily collected. When appellant's salesmen obtained listings outside of appellant's office, they brought those listings to appellant's office so that same might be listed with appellant. Earnest money receipts were taken in the name of appellant as agent, and such moneys were deposited in appellant's own trust account. Usually, the sales are consummated in the office of appellant. Appellant testified that he would not permit his salesmen to sell for other real estate firms, as it would not make for good co-operative effort.

In *Broderick, Inc. v. Riley, ante* p. 706, 157 P. (2d) 954, appellant was not satisfied to have any of its brokers under contract who were also associated with a rival real estate firm, as "that wouldn't be consistent with good business for either party." In the case cited, there was little or nothing in the record to indicate what activities the brokers associated with appellant had during the period in question other than their association with appellant. The contract in that case was so framed that, if the brokers did anything at variance with the will of appellant, its policy or preference, they knew that the contract with appellant might be ended overnight. At the end of each month, the salesmen were compensated for their services by splitting the commissions earned on sales of appellant's listings, as stated above: one half to the salesman who effected the sale and one half to appellant.

In *Broderick, Inc. v. Riley, supra,* in *Curtis v. Riley, post* p. 951, 157 P. (2d) 975, and in the case at bar, the appellant broker paid no remuneration to the brokers, in the first two cases cited, associated with appellant, and in the case at bar appellant broker paid no remuneration to the salesmen associated with him. We repeat that, in each of the three cases, those associated with appellant broker were not paid by appellant broker any remuneration for their services, *in any form.* In the first two cases when the broker, and in the case at bar when the salesman, effected a sale and the

commission was earned, the appellant broker in each case received one half of the commission the broker had earned in consideration of the services performed by the appellant in each of the three cases. The source of the commission is, of course, in each case appellant's and the associate's (the broker in the two, the salesman in the other) principal, the property owner; not appellant in either of the three cases.

It is clear from the facts that the salesmen are not in the employ of the broker, but are independent and free to do their work as they choose. Their interest is only in possible sales of real estate on which they are working and from which they hope to make a commission. We repeat: The salesmen do not look to appellant broker in the case at bar for salary or other compensation. In the instant case, as in the two cited cases, the compensation—commission—is paid by the property owner whose property is sold.

"Employment" is defined by the statute (Rem. Rev. Stat. (Sup.), § 9998-119 (g) (1)) as ". . . service, . . . performed for wages or under any contract of hire, written or oral, express or implied." "Wages" under the statute (Rem. Rev. Stat. (Sup.), § 9998-119a (m)) is remuneration payable by an employer to a worker for employment, and "remuneration" is defined as ". . . all compensation payable for personal services, including commissions . . ."

The other provisions of the unemployment compensation act upon which counsel for the commissioner rely are found in Rem. Rev. Stat. (Sup.), § 9998-119a (g) (5) and read as follows:

"(5) Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commissioner that:

"(i) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

"(ii) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of busi-

ness of the enterprises for which such service is performed; and

"(iii) Such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the contract of service."

The position of counsel for appellant in the case at bar is substantially the same as that of appellant in *Broderick, Inc. v. Riley, supra,* and appellant in *Curtis v. Riley, supra,* which is that those associated with the real estate broker in each of the three cases were not in service for the broker for wages or under a contract of hire and therefore were not subject to the unemployment compensation act. In other words, and three subdivisions (i), (ii), and (iii) upon which counsel for the commissioner rely are merely exceptions to the general definition of employment and apply only to those who fall within the ordinary definition of "employer"; that is, the three exceptions do not apply until after it has been determined that the service in question is within the term "employment" and that, until it has been so determined, the limitations have no application whatsoever. We so held in *Broderick, Inc. v. Riley, supra,* and *Curtis v. Riley, supra.* The case at bar is indistinguishable in principle and on the facts from the two cases cited.

In *Broderick, Inc. v. Riley, supra,* which is typical of the three cases, the appellant was a real estate broker. Real estate sales were a very substantial part of appellant's business. The brokers, associated with appellant in the two cases cited, operated under an agreement which obligated the appellant to furnish to the brokers associated with appellant listings and prospective purchasers, office facilities at its place of business with a desk and telephone, stenographic service, and advertising. The brokers associated with appellant were obligated to work diligently and exert their best efforts to promote appellant's interests as well as their own. Appellant agreed to pay to the brokers their commissions when earned. When the appellant deemed the conduct of its associates improper, it terminated the associ-

ation. Appellant in the cited cases did not permit its associates to work with any other real estate firm.

The brokers had access to the listings of real estate in the office of appellant, where they were prepared by appellant for convenient use. Those listings were available to all of those associated with appellant in each of the cases cited. Occasionally, the brokers brought in listings, but for the most part the listings were obtained through appellant's office. The office received listings, arranged for inspection of the property, agreed upon a price, and then the brokers were supplied with that information and attempted to sell the property.

Bookkeeping of the brokers' selling activities were maintained in each of the cases by appellant and not by the brokers. When a broker effected a sale, the earnest money receipts were placed in appellant's trust account, from which, after other expenses were paid, the remainder was divided equally, one half going to appellant and one half to the broker for his commission. Receipts for sales by all the brokers were placed in a common trust account in the name of the appellant prior to the division of the profits. If a broker uncovered property for sale not listed with appellant and negotiated a sale therefor, in each of the cited cases, as in the case at bar, his commission earned was still divided equally between the broker selling the property and with the appellant.

In each of the cases cited, appellant furnished the brokers with business cards carrying the name of appellant and the broker's name. Letters were written by the brokers at the office of appellant, who supplied stenographers and stationery, the letters being signed in some of the cases by the broker, and in some cases by the name of appellant. All of the business transacted was transacted in the name of appellant. The brokers in each of the cases represented themselves as associated with or from the firm of appellant. The "earnest money receipt" and the "authority to sell real estate" form bore appellant's name and referred to appellant as the agent entitled to the sales commission and as having the authority to sell.

In the case at bar, as in *Broderick, Inc. v. Riley, supra,* and *Curtis v. Riley, supra,* those associated with the appellant broker were remunerated by way of commissions on the sales which they made, which commissions were paid in each of the three cases by the seller of the property. The services performed by the licensed real estate salesmen associated with appellant in the case at bar were the same as the services performed by the licensed real estate brokers associated with appellant in each of the two cases cited.

In respondent's brief in *Broderick, Inc. v. Riley, supra,* which was tried at the same time to the same judge of the superior court for King county with the case at bar and *Curtis v. Riley, supra,* is the statement:

"If it be granted, as appellant has contended and still urges, that the brokers' services were performed for themselves and the company as co-principals or in joint adventure, then it must likewise be granted that to the same extent any salesman who is paid by commission on sales made by him could well claim that in making sales he was performing services for himself (to the extent of his commissions) and for the company which he represents."

The last expressions of this court on facts like those in the case at bar are our opinions in *Broderick, Inc. v. Riley, supra,* and *Curtis v. Riley, supra,* which are determinative of the question in the case at bar. The two cases cited and the case at bar are indistinguishable in principle and on the facts.

Consistent with our opinion in each of the two cases just cited, we hold that appellant is not the employer, under the unemployment compensation act, of the real estate salesmen associated with him; therefore, the judgment is reversed.

BEALS, C. J., STEINERT, and JEFFERS, JJ., concur.

GRADY, J. (dissenting)—I am not in accord with the majority opinion. I do not think that the cases of *Broderick, Inc. v. Riley* and the companion case, *Curtis v. Riley,* cited in the majority opinion, are controlling. Those cases presented very close questions of fact. The conclusion was

reached by the majority that the real estate brokers were not in employment as defined by statute, but were joint adventurers with the alleged employer, and that such claimed employer did not pay them any wages; also, that the money the brokers received as a result of their efforts came from the owners of the property that was sold, and, while it was originally placed in a trust fund, it eventually was divided between the realtors and brokers; that the money never became the property of the realtors and no money belonging to the realtors was used to pay the brokers.

This case has many similar features to the *Broderick* and *Curtis* cases in so far as the method of handling the sales of real estate is concerned, but there is one vital difference which I think distinguishes it from those cases and should be controlling here, and that is the remuneration which the real estate salesmen received for their efforts in selling real estate was money which belonged to the appellant. This money was paid to appellant by the owners of the property sold. It was held in abeyance pending the closing of a sale. When such sale was complete, the salesmen were then compensated by appellant. The appellant expressed this thought in his testimony as follows: "Q. And at the end of each month, an account is made up? Is that the way you do or do you pay them right away? A. Pay them right away as soon as the deal is consummated."

It further appears from the record that, in the arrangement between the appellant and the salesmen, he had the right to discharge any of them at any time and they were not permitted to sell for other real estate firms.

I think the evidence supports the finding of the department that these salesmen performed services for the appellant for wages under a contract of hire and therefore were in employment as defined by statute. When it is determined that one is in such employment, then, if the employer desires to exclude himself from the unemployment compensation act, he must show that the three exceptions enumerated in Rem. Supp. 1943, § 9998-119g (5) [P. P. C. § 928-1, § 19 (g)

(5).], apply to those who are asserted to be in his employment.

The department found that the salesmen were not brought within any of the three exceptions, and in my opinion the record supports this finding.

We decided in *McDermott v. State*, 196 Wash. 261, 82 P. (2d) 568; *Mulhausen v. Bates*, 9 Wn. (2d) 264, 114 P. (2d) 995; *In re Foy*, 10 Wn. (2d) 317, 116 P. (2d) 545; *Sound Cities Gas & Oil Co. v. Ryan*, 13 Wn. (2d) 457, 125 P. (2d) 246; *State v. Goessman*, 13 Wn. (2d) 598, 126 P. (2d) 201; *In re Hillman Inv. Co.*, 15 Wn. (2d) 452, 131 P. (2d) 160; and *Unemployment Compensation Department v. Hunt*, 17 Wn. (2d) 228, 135 P. (2d) 89; that common-law concepts of the relationship of employer and employee and principal and agent do not apply in determining the question of employment. The only exception is the case of *Washington Recorder Pub. Co. v. Ernst*, 199 Wash. 176, 91 P. (2d) 718, 124 A. L. R. 667. If it is considered that the *Recorder* case is based upon the theory that the newsboys were independent contractors and therefore not within the act, then it is not in accord with our other cases and to that extent should be overruled. But if it is considered that it is based upon the theory that the relationship between the publishing company and the newsboys was that of vendor and vendees, as suggested in *Mulhausen v. Bates, supra,* it is not in its result out of harmony with our other cases. We should not extend the application of the *Broderick* and *Curtis* cases, *supra,* beyond the facts of those cases, but limit them as authority to situations where it clearly appears that there was a joint adventure relationship or something of that character and that no compensation was paid by the alleged employer for services rendered.

The judgment should be affirmed.