285 P.2d 493

Warren R. GRAHAM d/b/a Warren R. Graham Agency, Plaintiff-Appellant,

v.

M. F. MIERA, W. S. Roberts, and A. J. Exter, individually and as the duly appointed, qualified and acting Members of the Employment Security Commission of the State of New Mexico, Defendants-Appellees.

No. 5935.

Supreme Court of New Mexico.

June 15, 1955.

Rehearing Denied July 21, 1955.

Marron & McRae, Joseph Phil Click, Albuquerque, for appellant.

Claud S. Mann, A. M. Frazier, Albuquerque, for appellees.

McGHEE, Justice.

The Employment Security Commission of New Mexico made an independent investigation and, without a hearing, determined the plaintiff, a real estate broker, was liable for the payment of unemployment tax on salesmen operating out of his office under the provisions of § 59–9–1 et seq., 1953 Compilation. To avoid a levy the commission was threatening to make, the plaintiff paid the taxes assessed and brought suit for a declaratory judgment under the provisions of § 59–9–20(c), 1953 Compilation, that he was not liable for the tax and was entitled to a refund of taxes paid.

The essence of the plaintiff's claim is that the salesmen are independent contractors and not employees, as claimed by the commission.

The case was heard and determined by the court below in favor of the commission upon the following summarized stipulation of facts:

The plaintiff is a broker licensed under New Mexico laws for the regulation of real estate dealers. The salesmen are licensed under said law, as such, as "employed" by him. He paid license fees to the New Mexico Real Estate Board for licenses for the salemen, the licenses being kept by him and returned to the board in event of discharge or resignation of a salesman. Plaintiff has posted a broker's bond with this board, as required by law, conditioned upon faithful performance of his duties as broker and the duties of his "employees", including the salesmen.

The plaintiff registered with the Employment Security Commission as an "employer" in October, 1950, and paid contributions for two salesmen for the calendar quarter ending December 31, 1950. Thereafter his quarterly reports did not cover any of his salesmen.

On August 2, 1954, the commission, upon the facts at hand after investigation and audit, found the plaintiff had not shown or offered to show facts satisfying conditions for exemption of his salesmen from the definition of employment appearing at § 59–9–22(g) (6), of the Unemployment Compensation Law, and determined the services of plaintiff's salesmen were not exempt from contributions thereunder. The sum of $1,035.55 was paid by plaintiff under protest. After authorized refund to him of $87.35, the balance of payment was held as a suspense fund by the commission pending final judgment in this case.

The working agreements between plaintiff and his salesmen are somewhat infor-

mal. The salesmen operate under oral contracts with him, terminable at the will of either party. The plaintiff divides with the salesmen commissions made from their sales of real estate. He may hire additional salesmen. He does not instruct the salesmen as to their ethics, but has the right to do so, and to discharge them upon failure to comply. He does not give instructions to them but sometimes makes suggestions with reference to their work, which he expects to be carried out. At times he offers them advice as to increasing sales or obtaining listings. The salesmen may give suggestions to him. Although not required to do so, the salesmen sometimes make oral reports. They are under obligation to conduct their activities so as to maintain the good will and reputation of the plaintiff and to exert their best efforts to sell real estate. Their services are confined to the territory in which plaintiff does business and constitute a necessary and integral part of his business.

The contracts of service do not provide for specific working hours of the salesmen, who normally arrange their own working times. They are, however, expected to devote the greater part of their time to the business and the selling of real estate has been the sole occupation of the salesmen, none having been customarily engaged in an independent trade or profession.

The plaintiff, at his expense, furnishes an office, two stenographers, desks for all, telephones, general office supplies and books covering each salesman's accounts. The salesmen use the office for telephoning, correspondence, filing and handling of listings, meetings and conferences. They generally contact the office several times a day to receive messages left there for them. They advise the plaintiff of vacation plans. They use business cards provided by the plaintiff. The salesmen furnish their time and services, mostly outside of the office, using their own automobiles and paying their own automobile expense.

Listings are not placed exclusively with any one salesman, nor does the plaintiff keep listings exclusively for himself, although he has that power. He makes out and approves closing statements on all sales, and sales cannot otherwise be closed. He is not bound by any promises made by his salesmen to others, unless previously authorized by him. He collects all commissions and the salesmen receive from him their portions of the same. He pays for advertisements of real estate, collects and pays all emergency school taxes on real estate sales and keeps the records thereof, holds and pays for a city occupation tax, none of these expenses or responsibilities being borne by the salesmen.

The salesmen sometimes work with salesmen of other brokers in selling property not listed with the plaintiff, splitting the commission for sale with the other broker and his salesmen. In such cases the plain-

tiff's salesmen split the commission they thus receive with the plaintiff. However, most sales of properties are made from plaintiff's listings.

Section 59–9–2, 1953 Compilation, Ch. 1, § 2, Spec.Sess.Laws, 1936, declares the public policy of New Mexico in the enactment of the law as follows:

"As a guide to the interpretation and application of this act (59–9–1 to 59–9–29), the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this state requires the enactment of this measure, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

The other parts of the Act with which we are here concerned read:

"[Section] 59–9–22. Definitions.— As used in this act * * *, unless the context clearly requires otherwise: * * *

"(g) (1) 'Employment' means any service performed prior to July 1, 1941, which was employment as defined in this section prior to such date, and subject to the other provisions of this subsection, service performed on and after July 1, 1941, which was employment as defined in this section prior to such date, and subject to the other provisions of this subsection, service performed on and after July 1, 1941, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied.

\* \* \* \* \* \*

"(6) Services performed by an individual for wages shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that:

"(A) Such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and

"(B) Such service is either outside the usual course of business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(C) Such individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the contract of service.

\*　　\*　　\*　　\*　　\*　　\*

"(m) 'Wages' means all remuneration for services, including commissions and bonuses and the cash value of all remuneration in any medium other than cash. The reasonable cash value of remuneration in any medium other than cash shall be estimated and determined in accordance with rules prescribed by the commission; \* \*."

New Mexico has a comprehensive statute providing for the licensing of real estate brokers and salesmen and also regulating their activities in the business of buying, selling and leasing real estate. § 67–24–1 to § 67–24–18, inclusive, 1953 Compilation.

Wherever the relation between the broker and a salesman is mentioned in the Real Estate Act, the salesman is called an employee of the broker and the latter is designated an employer. As stated by Justice Desmond in his dissent (in which two justices joined) in In re Wilson Sullivan Co., 1942, 289 N.Y. 110, 44 N.E.2d 387, 390, a case involving the same question we have under a like act, the use of the words, "employee" and "employer", by the legislature in the Real Estate Act, Real Property Law, McKinney's Consol. Laws, c. 50, §§ 440, 441, was not inadvertent and was worthy of consideration by the court.

There is a sharp division among the courts of this country, as well as the members of practically every court which has passed on the question, as to whether real estate salesmen operating out of a broker's office come within the terms of the unemployment security acts of the various states. Some of the division of opinion appears to have been caused by variance in some respects in the provisions of the particular security act in question from those in effect elsewhere, but the holdings of the courts that such salesmen are independent contractors are the result of some of the courts holding on to the common law concepts of the law of master and servant, instead of realizing the acts call for a liberal construction to the end their remedial and humanitarian purposes may be given effect and recognizing that statutory definitions modify the common law definitions of master and servant. Some courts were also

influenced by a rule of strict construction against the state in tax cases prevailing in their states, although the real stumbling block to bringing real estate salesmen under the protection of the acts, as shown by a study of the cases, lay in the inability of the majority (and practically all the cases, as above indicated, are by sharply divided courts) to accept the statutory definitions in the unemployment compensation acts as modifying the common law concepts of the master-servant relationship. Instead, by judicial fiat, they made the common law swallow the statutory modifications common to all of these acts and thus nullified the legislative will.

This court has not hesitated to give liberal construction to remedial legislation although it be in derogation of the common law, as was done in construing our Workmen's Compensation Act in Stevenson v. Lee Moor Contracting Co., 1941, 45 N.M. 354, 115 P.2d 342, Henderson v. Texas-New Mexico Pipe Line Co., 1942, 46 N.M. 458, 131 P.2d 269, and a number of other cases not necessary to cite. In addition, this court held in Peisker v. Unemployment Compensation Commission, 1941, 45 N.M. 307, 115 P.2d 62, that an employer claiming an exemption from the unemployment tax carried a heavy burden because of our rule of decision that the grant of an exemption from the tax would be strictly construed against the claimant. We there followed our opinion in Samosa v. Lopez, 1914, 19 N.M. 312, 142 P. 927, where it was stated a statute of exemption from taxation must receive a strict construction. We are not disposed to depart from the rule of those cases.

We have been favored with exhaustive and able briefs on each of the questions involved and the oral arguments were most interesting. After a careful study of the cases cited and the arguments made, we are not surprised at the contrariety of views of the courts, and the justices of the courts, which have passed on whether real estate salesmen operating in substantially the same manner as those here involved, come under the unemployment acts.

■ We feel in view of the remedial purposes of the act, and the statutory modification of the common law concepts of master and servant, we should follow the decisions in McClain v. Church, 1951, 72 Ariz. 354, 236 P.2d 44, 29 A.L.R.2d 746; Babb & Nolan v. Huiet, 1942, 67 Ga.App. 861, 21 S.E.2d 663 and Rahoutis v. Unemployment Compensation Commission, 1943, 171 Or. 93, 136 P.2d 426, that real estate salesmen operating as those do who are working out of the plaintiff's office under the conditions described above are in fact employees and under the protection of the Unemployment Compensation Law of New Mexico.

The judgment will be affirmed. It is so ordered.

COMPTON, C. J., and SADLER, J., concur.

LUJAN and KIKER, JJ., not participating.