**358 P.2d 997**

James A. BEAMAN, Aubrey B. Barker and Harold Warnock, as members of and constituting the Employment Security Commission of Arizona, Appellants,

v.

SUPERIOR PRODUCTS, INC., an Arizona corporation, and John L. Zeigler, dba Zeigler's Appliances of Tucson, Arizona, Appellees.

No. 7078.

Supreme Court of Arizona.

Feb. 1, 1961.

Wade Church, Atty. Gen., and Richard J. Daniels, Asst. Atty. Gen., for appellants.

Richard J. Dowdall, Tucson, for appellees.

UDALL, Justice.

This is an appeal from a judgment of the superior court reversing an order of appellant employment security commission requiring the appellees to pay unemployment contributions on amounts earned as commissions by salesmen selling vacuum cleaners for said appellees. The major issue disputed before the Employment Security Commission was whether the appellees' salesmen were "employees" within the meaning of the term as used in A.R.S. § 23–615. After full hearing the Commission so found. On appeal the superior court concluded there was no competent, material or substantial evidence produced at the hearing which would justify a finding that these salesmen were employees within the meaning of the statute as understood by the superior court.

We think the superior court took too narrow a view of the term "employee" and

was overly impressed with the form rather than the substance of the relationship between appellees and their salesmen.

This court long since has adopted a liberal interpretation of this act. In Southwest Lumber Mills v. Employment Security Commission, 66 Ariz. 1, 5, 182 P.2d 83, 85, we said:

"* * * it has been [sic] remembered that the statute is remedial; that it enunciates and is addressed to a public policy; that it is ameliatory of the evils resulting from lack of employment; that it is to be liberally construed to effectuate its purpose; that devices of every kind to defeat it are to be frowned upon and stricken down; and that by the several Arizona cases construing and giving it effect this court has adopted an interpretation of it strictly in accord with its intent and objects as announced by the legislature in the preamble to the Act."

See also, e. g., Sisk v. Arizona Ice & Cold Storage Co., 60 Ariz. 496, 141 P.2d 395; Gaskin v. Wayland, 61 Ariz. 291, 148 P.2d 590.

In relation to the particular point here in issue (who is covered by the act?) we have made it clear that the common law definition of the terms "employer", "employee", and "independent contractor" has been abrogated for the purposes of the act in favor of a more liberal intrepretation

consistent with the purpose of the act. We went to great pains to make this clear in McClain v. Church, 72 Ariz. 354, 357–358, 236 P.2d 44, 46–47, 29 A.L.R.2d 746:

"The courts have divided upon the question as to those who were covered by similarly worded unemployment compensation acts. One school of judidial thought adopted the view that the Act applied only to those who sustained toward each other the common law relationship of either master and servant or principal and agent, while the other adopted the view that it was intended by the lawmakers to, and the statutes defining 'employment' did, enlarge the scope of that term and that it included many individuals who have otherwise been excluded from the benefits of the acts by the former concepts of master and servant and principal and agent as recognized by the common law. This court in the case of Sisk v. Arizona Ice & Cold Storage Co., 60 Ariz. 496, 141 P.2d 395, definitely rejected the common law concept of 'employment' and aligned Arizona with the jurisdictions enlarging the scope of the term."

The act in its present posture is even broader than it was when the McClain case arose. The fact that the so-called "A,B,C" test has been eliminated from the statute (formerly § 56–1002(i) (5) (A) (B) (C), A.C.A.1939 as amended) does

not make the coverage of the law less liberal. On the contrary, the test was in the act originally for the purpose of restricting coverage, not broadening it. When it was found that the relationship was *within* the scope of the "A,B,C" test, it was determined that the relationship was *not* that of employer-employee. See McClain v. Church, supra. The removal of this restriction broadened the coverage of the act. What was said of "wages" in Beaman v. Westward Ho Hotel Co., 89 Ariz. 1, 357 P.2d 327, 331, applies equally to "employment":

> "We have repeatedly held however, that in the absence of constitutional limitations, the power of the Legislature in its field is plenary. Therefore, when it declares that 'wages means all remuneration for services *from whatever source*' the courts are without authority to hold otherwise. The above term is all inclusive. It is broader than the language deleted from the act existing prior to the 1947 amendment. Any relief for appellee rests exclusively with the Legislature." (Justice Phelps concurring specially.) (Emphasis in original.)

Although each case must necessarily depend on its peculiar facts we think the following excerpt is correct and should serve as a useful guide in cases involving salesmen.

"Salesmen are generally employees, even though paid on a commission basis and comparatively free from control. In most cases the services are performed in the course of the employer's business and not in the furtherance of an independently established business of the salesman. Although actual control may not be apparent, the person for whom the services are performed generally has the right to control the salesman's activities. Thus it has been held that where 'the subject of sale, the terms of sale, and the proceeds of the sale remained in the control of the company * * * this constituted a general control * * *' Similarly the courts have stated that 'the right to approve or reject all sales solicited by a salesman necessarily implied the power of designating and directing in advance the terms on which each lot must be sold.' In addition, the arrangement with most salesmen is generally subject to termination by either party with little or no notice." (C.C.H. id. para. 1348 (.01)).

Sudduth v. E. S. C., Super.Ct., San Francisco, County, No. 422, 452, October 28, 1953. C.C.H. Unemployment Insurance Reporter, California, para. 1348 (.261), (.01).

In the case at hand appellees, in the regular course of business, engaged the

services of salesmen to handle the retail sale of its products. The salesmen drew on consignment the number of vacuum cleaners and attachments they needed in performing their selling work and they were responsible to appellees for the merchandise thus drawn. The appellees furnished regular conditional sales contract forms and, after the conditional sales contracts were obtained, the contracts were turned to the appellees for further handling and acceptance before the sale was deemed complete. It was claimed by appellees that the salesmen were not required to turn the contracts to them but as a matter of practice this procedure was followed.

All guarantees on the machines and the servicing of the same were handled by and through the appellees, and the salesmen's responsibility to the customer terminated when the contract had been accepted. Some discretion was allowed the salesmen in determining the net selling price; however, the appellees would furnish a "fair trade price" but the ultimate selling price was flexible depending on the amount the salesmen allowed for trade-ins. All trade-ins became the property of the salesmen.

A careful examination of the entire record shows that the Commission was justified in finding, among other facts, the following which, when viewed all together and in context, fully justify its determination that these salesmen were employees for purposes of the act: (1) appellees could terminate the relationship between them and their salesmen at any time; (2) appellees could refuse to accept the sales contracts offered by the salesmen; (3) salesmen immediately returned to customer's home and picked up cleaner if customer's credit was not acceptable to appellees or agency providing financing; (4) salesmen did not provide customers with follow-up service and guarantees that went with the products; (5) salesmen had little or no investment in facilities; (6) salesmen presented themselves to the public as appellees' representatives; (7) financing was arranged and guaranteed by appellees; (8) salesmen's commission on each sale was a set amount; (9) salesmen could return unsold cleaner to appellees without paying for them; (10) salesmen delivered signed copies of conditional sales contract to appellees; (11) there was no evidence that the salesmen ever had to pay back moneys they received as commission when contracts were defaulted; (12) salesmen's appointments with some customers were made through appellees' office; (13) the appellees reported and paid the state sales tax on these sales.

It is not disputed that if these salesmen were employees within the act the Commission correctly determined that the cash commissions paid by appellees were wages. However, appellees contend that the

failure of the Commission also to include the value of the trade-ins as wages is inconsistent with the finding that these salesmen employees and that the finding concerning the employment relationship should yield to that concerning the trade-ins as wages. We do not agree.

The threshold issue in these cases is whether or not there exists an employer-employee relationship. While the types and means of compensation for services may be relevant in determining the type of relationship it is neither essential to nor conclusive of the initial determination. Where, as here, there is evidence sufficient to show an employer-employee relationship, an apparently inconsistent ruling on the issue of what is and is not wages cannot upset the initial determination. We know of no rule which requires the Commission in this case to demand contribution for every conceivable form of compensation to employees on pain of being denied the right to demand contributions for the cash commissions received by the employees.

For the foregoing reasons the judgment of the superior court is reversed with instructions to enter judgment affirming the decision of the Commission.

STRUCKMEYER, C. J., CHARLES C. BERNSTEIN, Vice Chief Justice, and JENNINGS and LOCKWOOD, JJ., concur.