593 P.2d 908

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Appellant,**

**v.**

**Jack W. KING, d/b/a King & Associates, William Bartelt & Stephen Litwin, d/b/a Bartelt & Litwin, William L. Bartelt, Jack W. King and Stephen C. Litwin, d/b/a Bartelt, King & Litwin, Appellees.**

No. 13942.

Supreme Court of Arizona, In Banc.

April 9, 1979.

Bruce E. Babbitt, Former Atty. Gen., John A. LaSota, Jr., Former Atty. Gen., Robert K. Corbin, Atty. Gen. by James A. Tucker, Asst. Atty. Gen., Phoenix, for appellant.

Burch, Cracchiolo, Levie, Guyer & Weyl by Stephen E. Silver, Phoenix, for appellees.

CAMERON, Chief Justice.

This is an appeal by the Arizona Department of Economic Security (DES) from a judgment of the Superior Court of Maricopa County which reversed a DES administrative ruling. The Superior Court held that an employer-employee relationship did not exist between the appellee court reporting firms and their court reporters and the court reporters' transcribers. The appeal is taken pursuant to A.R.S. § 23–682. This court has jurisdiction pursuant to Rule 19(e) of the Rules of Civil Appellate Procedure, 17A A.R.S.

We must determine whether an employer-employee relationship exists between the firms and the court reporters and their transcribers. If we find such relationship, the appellees will be required to pay unemployment taxes on the reporters' and transcribers' "wages."

All the appellee firms operate in the same manner. The firms maintain a central office and are listed in the telephone directory under the firm name. A firm will take a request for a court reporter, note it on a schedule giving the date, time and place of the deposition or other proceeding, and inform a court reporter of the job. If a specific court reporter is requested, he or she will be assigned if possible. After stenographically reporting the testimony of a witness, the court reporter dictates that testimony onto a taped recording, and from the recording a typewritten transcript is made. The person who types the transcript is known as a "transcriber." Transcribers work at home and either mail or deliver the transcribed pages to the court reporting firm. The firm will then assemble the transcript, mail the finished transcript to the attorney requesting it, and bill him for services rendered. In addition, the firm provides the office supplies (including transcript paper), and manages the account books of the firm which show the payments to the firm of the reporters' clients for work done by the reporters.

The court reporters provide their own stenographic and dictating equipment as well as their own transportation to a job. The court reporters also secure and pay their own transcribers. Both court reporters and transcribers set their own hours within the framework of the business and both may refuse work if they so choose.

In return for their services, the firms keep a percentage of the amount received from the billed customer as a fee. This arrangement relieves the court reporters of the necessity of providing their own administrative services. The amount of a firm's percentage is negotiated on an individual basis but is between 15% and 30%. No funds are advanced by the firm. They take their percentage only out of the amounts actually received and the rest goes to the reporter, who in turn pays the transcriber.

In short, the firms perform the functions of a booking agency and an office manager. The court reporters are independent and pay a percentage of their actual receipts for this service. The reporters pay the transcribers. The testimony also indicates that when court reporters leave the firms they do not seek unemployment benefits.

## COURT REPORTERS

The pertinent Arizona statutes read:
" 'Employment' means any service of whatever nature performed by an employee for the person employing him * * *." A.R.S. § 23–615;
" 'Wages' means all remuneration for services from whatever source, including

commissions and bonuses * * *." A.R.S. § 23–622(A).

This court has held that the above statutory definitions abrogate the common law definitions of "employee" and "independent contractor" and that the statutes require liberal construction so that the purposes of the Employment Security Act can be fully realized. *Beaman v. Superior Products, Inc.,* 89 Ariz. 119, 121–22, 358 P.2d 997, 997–98 (1961); *McClain v. Church,* 72 Ariz. 354, 357–58, 236 P.2d 44, 46–47 (1951). This construction makes reliance upon existing federal law and other jurisdictions which follow the common law definitions of "employer," "employee," and "independent contractor" unavailable. See *Ariz. Dept. of Economic Security v. Little,* 24 Ariz.App. 480, 539 P.2d 954 (1975).

The leading case of this court is *Beaman,* supra, in which we stated:

"The threshold issue in these cases is whether or not there exists an employer-employee relationship. While the types and means of compensation for services may be relevant in determining the type of relationship it is neither essential to nor conclusive of the initial determination." *Beaman v. Superior Products, Inc.,* supra, 89 Ariz. at 124, 358 P.2d at 999–1000.

In *Beaman,* it was held that vacuum cleaner salesmen who took vacuum cleaners on consignment were employees. The court viewed the totality of the circumstances and found that there was an employer-employee relationship. The court noted that:

"(1) appellees could terminate the relationship between them and their salesmen at any time; (2) appellees could refuse to accept the sales contracts offered by the salesmen; (3) salesmen immediately returned to customer's home and picked up cleaner if customer's credit was not acceptable to appellees or agency providing financing; (4) salesmen did not provide customers with follow-up service and guarantees that went with the products; (5) salesmen had little or no investment in facilities; (6) salesmen presented themselves to the public as appellees' representatives; (7) financing was arranged and guaranteed by appellees; (8) salesmen's commission on each sale was a set amount; (9) salesmen could return unsold cleaner to appellees without paying for them; (10) salesmen delivered signed copies of conditional sales contract to appellees; (11) there was no evidence that the salesmen ever had to pay back moneys they received as commission when contracts were defaulted; (12) salesmen's appointments with some customers were made through appellees' office; (13) the appellees reported and paid the state sales tax on these sales." 89 Ariz. at 123, 358 P.2d at 999.

We feel that *Beaman* is distinguishable from the instant case. In *Beaman,* supra, it was obvious that the company ran the business and that the salesmen in fact worked for the company. The company could refuse to approve the sales. The firms herein cannot disapprove of the reporters' work for the client. In *Beaman,* the company approved all credit arrangements. The firms do not approve the clients' credit. Indeed, the reporter may extend credit if he wants and the firm can voice no objection to such extension. In *Beaman,* the company provided follow-up services indicating a direct relationship between the purchaser and the company. In the instant case, the reporter deals with the client while the firm, except for bookkeeping and billing, has no contact with the client or obligation to him. If the client does not pay the bill, that is the problem of the reporter and not of the firm. The firm does not guarantee the bill or provide financing as the company did in *Beaman.* The firm does not set the price to be charged the client as was done in *Beaman.* Also in *Beaman,* the company paid state sales taxes on the sales while in the instant case, taxes, if any, would be paid by the reporter. In the instant case, the reporters did not work for the firms, they worked for themselves. They associated with the firm so that the reporters could avoid administrative problems. As one reporter testified, he wanted:

"Someone to answer the phone and someone to bill the work, someone to bind the work, someone to do the delivering if things had to be picked up and delivered."

Viewing the facts as a whole, we can easily distinguish between *Beaman,* supra, and the instant case. It is evident that in *Beaman* the salesmen were performing services "for" the company. In the instant case it is just as evident, even following a liberal construction designed to include as many persons as possible within the statute, that the reporters were not performing services "for" the firms and that an employer-employee relationship did not exist.

This court has stated:

"The Act was intended not for the protection of men of business having the profit motive as their guiding star, but of laborers in the vineyard whose prime assets are strong and willing hands, art, and ability, and whose great interest, in unity with that of the state, is security from unemployment and the loss of their earnings * * *." *Southwest Lumber Mills v. Employment Security Commission,* 66 Ariz. 1, 10, 182 P.2d 83, 88–89 (1947).

As appellees noted in their brief, even if we were to find that public policy demands the reporters be considered employees in order to enjoy the benefits and protection of the Employment Security Act, it would be almost impossible for them to receive unemployment compensation. Under the facts of this case, it is difficult to imagine how court reporters or transcribers could ever become unemployed or qualify for unemployment compensation payments. We agree with appellees that it would appear that DES is collecting unemployment contributions for coverage of individuals who are not entitled to the benefits.

■ It is also clear that the parties hereto did not intend to establish an employer-employee relationship. We agree with the following statement:

"The independent contractor status has long been recognized in the law. Parties have a perfect right, in their dealings with each other, to establish such status in order to avoid the relationship of employer-employee." *Saiki v. United States,* 306 F.2d 642, 652 (8th Cir. 1962).

We find no error.

## TRANSCRIBERS

■ Since we have held that the court reporters are not employees of the appellee firms, it follows that the transcribers, who perform services for the court reporters and not the firms, are not employed by the firms.

Affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.