**In re Larry Leroy KALIFF, Bankrupt.**

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Plaintiff,**

**v.**

**Larry Leroy KALIFF, Defendant.**

**Bankruptcy No. B–78–2199–A–PHX–VM.**

United States Bankruptcy Court,
D. Arizona.

Dec. 10, 1979.

Elizabeth Stover, Phoenix, Ariz., for Kaliff.

Frank Sagarino, Asst. Atty. Gen., Phoenix, Ariz., for plaintiff.

## MEMORANDUM

VINCENT D. MAGGIORE, Bankruptcy Judge.

This is a contested matter under Section 17a(2) of the Bankruptcy Act (11 U.S.C. § 35). An agency of the State of Arizona claimed that the defendant-bankrupt fraudulently obtained unemployment insurance benefits under A.R.S. § 23–601 et seq. Trial was held before the U. S. Bankruptcy Court for the District of Arizona. The following facts were adduced by the Court.

The bankrupt filed a voluntary petition on November 16, 1979. The state through the Department of Economic Security filed a complaint on January 30, 1979, objecting to the discharge of its debt pursuant to Section 17a(2) of the Bankruptcy Act. In addition to its "obtaining by fraud" argument, the state asserted that the matter was res judicata because of a state court default judgment taken against the bankrupt.

In response, the defendant-bankrupt denied fraud in any form and asserted that the amounts which he had received for picketing services were not "wages" within the scope of the Arizona Economic Security Act. See A.R.S. § 23–622(A).

■ The state's res judicata argument is erroneous. In *Brown v. Felson*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the Supreme Court reasserted, in a Section 17a case (11 U.S.C. § 35), that the doctrine of res judicata is sometimes not applicable to Bankruptcy Courts. The Court reasoned that a claim of fraud under the bankruptcy laws is a new issue not tried in state court. The Supreme Court also instructed that Congress intended "the fullest possible inquiry" under *federal* law.

■ The Bankruptcy Court is bound to consider all relevant evidence including the state court's determination. *In re Houtman*, 568 F.2d 651 (9th Cir. 1978); *Glass v. Miller & Kearney*, 577 F.2d 537 (9th Cir. 1978).

■ As is otherwise ordinarily the case, where state law determines the rights, duties, and obligations of the parties, the Bankruptcy Court will implement state policies as they are indicated in appropriate statutes and decisions. *Nitz v. Nitz*, 568 F.2d 148 (10th Cir. 1977); *In re Komfo Products Corp.*, 247 F.Supp. 229 (D.C.Pa. 1965). In this case, Arizona has enacted a comprehensive scheme aimed at protecting the unemployed worker. See A.R.S. § 23–

601 et seq. To the extent that these statutory provisions, and the cases construing them, are not in conflict with federal law the Bankruptcy Court will follow them.

■ The bankrupt received money in the form of a paycheck from his union, for picketing services, while he was collecting unemployment compensation from the State of Arizona. Arizona case law is clear. The unemployment insurance and compensation scheme is designed as a social and economic barrier against the ravages of unemployment. The policy of the Act is to include as many types of employment as possible. *Arizona Dept. of Econ. Sec. v. Little*, 24 Ariz.App. 480, 539 P.2d 954 (1975); *Southwest Lumber Mills v. Employ. Sec. Comm.*, 66 Ariz. 1, 182 P.2d 83 (1947).

A.R.S. § 23–615 defines "employment" as:

"Employment" means any service of whatever nature performed by an employee for the person employing him, including service in interstate commerce,

A.R.S. § 23–622(A) defines "wages" as:
A. "Wages" means all remuneration for services from whatever source, including commissions and bonuses and the cash value of all remuneration in any medium other than cash. The reasonable cash value of remuneration in any medium other than cash shall be estimated and determined in accordance with regulations prescribed by the commission.

■ Counsel for bankrupt has cited *Az. Dept. of Econ. Sec. v. Jack W. King, et al.*, 122 Ariz. 158, 593 P.2d 908 (1979). It is argued that the Arizona Supreme Court renewed its approval of the well known status of "independent contractor", and held that that status is not bound by the provisions of A.R.S. § 23–601 et seq. See page 911. However, the Court reached its decision by applying the criteria set out in *Beaman v. Superior Products*, 89 Ariz. 119, 358 P.2d 997 (1961), i. e., "Whether . . there exists an employer-employee relationship?" In *Beaman*, the Court utilized a set of criteria that included:

(1) employer's right to terminate relationship;

(2) employee's right to refuse to work;

(3) employee's presentation to public that he was representative of employer;

(4) employer's payment of other state and federal taxes.

Applying these criteria to this case, the defendant-bankrupt's position or status as an employee, and not as an independent contractor, is clearly recognizable. The union had the right to terminate the services of the defendant at any time; he was employed at their pleasure. The defendant had a right to terminate his services; he voluntarily consented to accept the employment as a picketer. While picketing, the defendant held himself out to be a representative of Union Local 906 and by appearances they were his employer. However, at trial, testimony showed that the bankrupt was employed by Union Local 2093. Both Union Local 2093 and Local 906 are members of the District Council of Carpenters. It was also shown that Local 2093 paid the bankrupt for the services rendered to Local 906, and that Local 2093 did this as part of an agreement through the District Council with Local 906. Without further entanglement in the area of labor law, this Court is satisfied that the agreements or understandings between the various locals and the District Council are such that the bankrupt's picketing activities presented to the public that he was a representative of his employer as contemplated in *Beaman*. Finally, the union, through its business agent, testified that it had paid state and federal taxes as required by law.

■ The bankrupt has denied an unlawful intent. In a Section 17a case, the objecting creditor had the burden to prove that the debtor made false representations with the intention and purpose of deceiving the creditor. *In re Taylor*, 514 F.2d 1370 (9th Cir. 1975); *Wright v. Lubinko*, 515 F.2d 260 (9th Cir. 1975).

■ In the testimony at trial, it came out that the union's business agent had advised the bankrupt-defendant at the beginning of his engagement that payment for picketing

services would not disturb his status under applicable Arizona Workmen's Unemployment Benefit statutes. But it also came out (see pages 48–60 of the trial transcript) that the agent had advised the bankrupt-defendant "within a week" that the union would no longer consider his payment as a "gratuity" and that it would treat it as a paycheck, i. e., subject to applicable state and federal withholding taxes.

A review of sources has failed to turn up a reported appellate case on 17a(2) and a state unemployment claim. However, the factual and legal setting is analogous to the obtaining of money or credit in the commercial sense. In this area it has been held that a "plausible explanation" for a misrepresentation is sufficient to escape liability. *In re Adams*, 368 F.Supp. 80 (D.C.S.D.1973). Also, a "change in circumstances" without a continuing misrepresentation has been held to be without the statute. *In re Sewell*, 361 F.Supp. 516 (D.C.Ga.1973). But a failure to notify of a change in status, or a failure to notify of a change in credit worthiness upon application for a renewal of credit, have been held to be within the statute. *In re Mwongozi*, 4 BCD 120, 16 CBC 191, (BC, OR, 1978); *In re Ellis*, 400 F.Supp. 1112 (D.C.N.Y.1975); *Household Finance v. Walters*, 8 Ariz.App. 114, 443 P.2d 929 (1968).

In the present case the bankrupt-defendant continued his misrepresentations nine (9) times after the first check *and* after the second discussion (referred to above) with the union's business' agent which put him on notice to the questionable status of his receiving *both* unemployment compensation and paychecks from the union. Counsel for defendant-bankrupt has offered the argument that the bankrupt ought not to be held responsible where the legal status of his actions is arguably unclear. This argument assumes that the bankrupt-debtor knew, at the time he filled out nine (9) unemployment certifications and requests for compensation, that the legal status of his actions was arguably unclear. Contrary to this argument, the bankrupt stated (see pp. 32–33 of the trial transcript) that he never asked questions concerning his status at the Department of Economic Security

office where he went to apply for unemployment compensation. This was in spite of his admitted knowledge (see page 32) of the penalties for false statements, and of the change in position taken by the union's business agent. (See pages 48–60). Thus, the Court is satisfied that at least after the second conversation with the union's business manager the defendant-bankrupt did have the intent required by Section 17a(2) of the Bankruptcy Act (11 U.S.C. § 35).