661 P.2d 210

**John and Jean FULLERTON, dba Track Down and Track Down, Inc., Petitioners-Appellants,**

**v.**

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Respondent-Appellee.**

**No. 1 CA–UB 279.**

Court of Appeals of Arizona, Division 1, Department C.

Jan. 6, 1983.

Rehearing Denied Feb. 24, 1983.

Review Denied March 29, 1983.

**361**

Harold Riddel, Phoenix, for petitioners-appellants.

Robert K. Corbin, Atty. Gen. by James A. Tucker, Asst. Atty. Gen., Phoenix, for respondent-appellee.

## OPINION

CONTRERAS, Judge.

This appeal from a decision of the Unemployment Insurance Appeals Board of the Arizona Department of Economic Security challenges the sufficiency of the evidence to support the Board's determination that the process servers in this case are employees of appellant-employer Track Down, Inc., pursuant to A.R.S. §§ 23–613.01 and –615. Applying the criteria established by statute, departmental regulation and case law, we find that the Board's decision is without sufficient support in the record and reverse the decision of the Board.

This case began with a notice of liability determination issued by the Arizona Department of Economic Security on March 10, 1981. This notice was an initial administrative determination that services of process servers constituted employment and the remuneration constituted wages which must be reported and on which state taxes for unemployment insurance are required to be paid. The employer filed its request for reconsideration on March 24. A reconsidered determination was mailed by the Department on May 20, 1981, affirming liability. Appellant filed a petition for hearing or review with the Appeals Board of the Department of Economic Security. A formal hearing was conducted before the Board's hearing officer on August 7, 1981.

A proposed decision of the Appeals Board was mailed to the parties on September 10, 1981. Appellant duly filed its objections but the decision was entered as proposed on October 30, 1981. Following appellants' request for review of the decision, the decision of the Appeals Board was affirmed on January 7, 1982. The employer filed its application for appeal, and on January 29, 1982, this court entered its order pursuant to A.R.S. § 41–1993 granting the application for appeal.

Track Down, Inc. is a process serving firm owned, at all times pertinent to this case, by appellants John and Jean Fullerton. Fullerton is a licensed process server empowered to serve legal process in several Arizona counties, including Maricopa County. Working with him are several individuals who are also licensed process servers. It is the services of these individuals that the department contends constitute employment. The commissions generated by these persons and paid to them are, according to the Board's decision, wages for which Track Down must contribute to the unemployment compensation fund. Statutes pertinent to the issues raised are A.R.S. §§ 23–613.01, –615 and –622. Also pertinent to the consideration of the questions presented in this appeal is departmental regulation A.C.R.R. R6–3–1723.

Two recent opinions of this court have analyzed in detail the policy and applications of the above-referenced statutory provisions and regulation. These are *Dial-A-Messenger, Inc. v. Arizona Department of Economic Security*, 133 Ariz. 47, 648 P.2d 1053 (Ct.App.1982), and *M.Z. Moore v. Arizona Department of Economic Security*, 132 Ariz. 360, 645 P.2d 1274 (Ct.App.1982). In both cases we reversed the decisions of the Appeals Board finding an employment relationship, under circumstances similar to those presented here.

In *Dial-A-Messenger, supra*, the court, reviewing the case in light of each indicia of control set out in that opinion, determined that parcel delivery services did not constitute employment pursuant to A.R.S. § 23–

615. The case reiterated the standard, first set out in *Smith v. Arizona Department of Economic Security,* 128 Ariz. 21, 623 P.2d 810 (Ct.App.1980), that the present Employment Security Act contemplates that the determination of independent contractor status be determined by tests developed under the common law, reasonably applied. The court considered all the relevant indicia of control and determined that the evidence was insufficient to support a decision of the Appeals Board that the drivers engaged in parcel delivery services were employees.

In *M.Z. Moore, supra,* a similar determination was made that there was insufficient evidence, applying the indicia of control to find that salespersons, runners, and traffic directors involved in the sale of radio commercial time were employees.

In *Smith, supra,* the particular facts of the case led this court to reverse the decision of the Arizona Department of Economic Security that the truckers in that decision were employees.

Finally, although decided under prior law, the Arizona Supreme Court in *Arizona Department of Economic Security v. King,* 122 Ariz. 158, 593 P.2d 908 (1979), decided that court reporters who received referrals through a court reporting firm were not employees for purposes of unemployment insurance contributions.

At the core of the analysis regarding whether the process servers in this case are employees or independent contractors are a number of factors to be applied to the particular facts of this case. Guided by the statutory provisions, case law, and departmental regulation referred to above, we turn to the application of these indicia to the present case.

1. *Authority over the individual's assistants.*

In *Arizona Department of Economic Security v. King, supra,* the litigation involved court reporters who did hire their own assistants. The supreme court noted that the ability to hire and control assistants without any necessity to answer to the court reporting firm in that case was one indicia

of the independence of the court reporters. We find similar facts and a similar result in the present case. The testimony is uncontroverted that the process servers in this case had the authority to hire assistants to carry out each job of process serving whether they chose to do so or not. Thus, the application of this factor does not support a finding of employment.

2. *Compliance with instructions.*

In the present case, there is no indication that the alleged employer controlled the method of serving process. Track Down served as a conduit through which process servers could obtain papers to serve without the necessity of developing their own clientele. The only instruction, the evidence showed, emanated from the clients for whom service was made, generally attorneys or law firms. A brief episode in the record concerning one occasion when Fullerton allowed a new process server to "ride along" hardly reaches the level of instruction, since the testimony was not controverted that Fullerton did not in any manner dictate when, where or how process would be served by the individual process servers.

3. *Oral or written reports.*

In this case the purposes of any activity regarding oral or written reports derive from the necessity that the process server provide return of service to the client. Pursuant to the custom in the industry, the testimony showed, the fee charged the client is in each case that which the client would pay the sheriff pursuant to A.R.S. § 11–445. Similarly, mileage charged to the client is based on a set schedule provided by law. *Id.* The process server in this case received 50% of the fees and mileage paid to Track Down. As noted, the use of the firm to obtain jobs does not negate the independent contractor relationship. And, in this case, the only reporting was required by law, not the firm.

4. *Personal performance.*

It is inherent in the performance of process serving that the job be performed per-

sonally. This is a factor created by the nature of the work and not by any act of Track Down. The testimony at the hearing is devoid of any procedure for or utilization of evaluation of personal performance. If the individual process server doesn't get the job done, he simply doesn't earn any money.

### 5. *Establishment of work sequence.*

The work sequence of any process server is entirely dependent upon the papers he or she picks up at the office and the circumstances and exigencies created by the documents and the *client's* instructions thereon. Fullerton does not set any work sequence. The process server is not subject to any instructions from Fullerton regarding the order in which process must be served. These decisions are made by the licensed process servers.

### 6. *Right to discharge.*

There was no testimony that Fullerton, once a project of service of any particular papers had been undertaken, had any authority to take the project away from the process server. The individual process server has the right and the personal responsibility to do the job satisfactorily and according to law. If an individual process server was not picking up papers to serve or was failing to complete the job as required by the client or by law, then Fullerton's only recourse was simply not to refer any more business to that individual. This is not equivalent to a discharge and is more comparable to a decision not to hire an independent contractor a second time if prior performance was not satisfactory.

### 7. *Set hours of work.*

If regular work hours are established by the firm, it is a factor indicating employment rather than an independent contractor relationship. In this case, all the testimony shows that process servers do not work set hours. They are not required to appear at the office of the firm at any particular time. There is no established guideline regarding when process should be served. The individuals are not required to work a minimum number of hours a week. It is the end product, service of process, that is the concern of Fullerton and the client for whom the papers are being served. The nature of the work of process serving is such that it can most often be successfully accomplished at times that do not fall within the routine work day. The testimony shows that persons can often be found and served with process at their homes before 6:00 a.m. or after 6:00 p.m. or on the weekends. The nonexistence of set hours of work tends to establish an independent contractor relationship in this case.

### 8. *Training.*

As we have previously stated, Track Down provides no training program for its process servers. While training would be an indicator of control showing a possible employment relationship, we have no such training program here. As discussed previously, the sole indication that any training was provided was one isolated instance in which a process server was allowed to "ride along" with Fullerton for one day to watch him serve process five or six times. This is not a training program, nor are the process servers hired by Track Down required to go on a "ride along." Most often, it is assumed that the process server already knows his job and is skilled in this particular line of work before papers are referred to him or her. We do not find that this indicia would lead to a conclusion that an employment relationship exists.

### 9. *Amount of time.*

There is no set amount of time within which a process server must perform his job. Concomitantly, Fullerton has no authority to require that any set amount of time be expended in the activities of process serving. Depending upon the experience and skill of each process server, some may be able to complete projects in a shorter period of time than others. Fullerton is concerned only with the end result because it is his clientele whose papers are being served. The testimony showed that these process servers, time permitting, had no

obligation to perform services solely for Fullerton. They were free to accept jobs from other sources. The fact that the work from the Fullerton firm kept them busy does not negate their capability to spend time on other jobs if desired. This factor tends to indicate an independent contractor relationship.

### 10. *Tools and materials.*

█ If an employer furnishes tools and materials so that the work can be accomplished, such activity is indicative of control. Here, other than the administrative service of notarization and billing of the clients, no materials or other items are furnished by Fullerton to the individual process servers. Fullerton, unlike *M.Z. Moore, supra,* did not even provide an office, desk or telephone for the individual process servers. Here, the process server pays his own expenses and provides the most single important tool of his trade—his automobile. In this case, this factor tends to show an independent contractor relationship.

### 11. *Expense reimbursement.*

There is no reimbursement to the process servers in this case for any expenses connected with their work except that, as a part of the commission, they are paid half of the mileage fees charged the client which is a part of a process server's compensation according to law. This payment for mileage is not indicative of control because it is a part of the price that the client pays for the service and not an expense reimbursement per se. There is no evidence that Fullerton paid for any gasoline, car insurance, parking fees, telephone calls, or any other expenses incurred by the individual process servers in this case in the course of completing their tasks. The analysis pertinent to this indicia of control tends to support an independent contractor relationship.

Other factors pertinent to a consideration of whether an employment relationship rather than an independent contractor relationship exists in any particular case can be found in the departmental regulation A.C. R.R. R6–3–1723(D). These factors are as follows: availability to the public; compensation on a job basis; realization of profit or loss; obligation; significant investment; and simultaneous contracts.

A review of the file in this case shows that the initial determination by the department relied heavily on a position that these process servers did not perform simultaneously for firms other than Track Down, and that they were not generally available to the public.

We have examined the evidence and find that the testimony is uncontroverted that the individual process servers in this case were not barred from accepting work outside that which was channeled to them through the Track Down firm. The testimony simply showed that the firm provided as much work as any of them cared to handle. There is no evidence that Fullerton had any right to curtail their work with other process serving firms or for other individuals or that he ever did so. We do not find any indication that these factors are present in this case so as to indicate an employment relationship.

In regard to the other factors mentioned pursuant to the above-referenced rule, we note that these process servers are compensated strictly on a job completion basis. We also find that process servers are subject to suffering loss or achieving profit depending upon their skills and upon their expenses. For example, at the hearing, one process server testified that if an individual cannot be found and many trips have been expended in an attempt to find such individual in order to serve process upon him, the expense can outweigh whatever mileage fees the process server might receive. Additionally, since the employer does not provide any expenses or reimbursement, significant loss can be incurred should the process server experience, for example, difficulty with his vehicle without which he is unable to perform his tasks. On the other hand, the skillful and experienced process server can and may realize profit in performing these tasks. For example, there was testimony at the hearing that the mileage fee provided to a server might be more than

required to cover his trip if an individual process server has invested in an economy vehicle; or if, as is often the case, one trip might provide the necessary transportation to serve more than one set of papers. Therefore, these individuals are in a position to realize personal profit or loss which is an indicia of independent status.

In regard to whether there is any obligation upon the process server to complete specific tasks to which he can incur liability if left uncompleted, the testimony in this case shows that a process server may in fact return papers unserved to Fullerton if unable to serve them or if time pressures so require it. There is no legal recourse for Fullerton in this situation except not to refer any more clients' papers to an individual process server. On the other hand, the process server could be personally liable to the individual client should he not perform his duties pursuant to law. *See* 16 A.R.S., Arizona Rules of Civil Procedure 4(c). The process server's liability to the client would indicate an independent status.

As we have already discussed, the process server makes an investment in a vehicle which, the witnesses testified, were used 90% or more of the time in their work. The testimony showed that the investment in the vehicle was made with an eye to economy in order to make the most profit from the mileage fees paid to the individuals. Thus, although a vehicle can also be used for personal purposes, the evidence shows that the vehicles of the process servers in this case are chosen for and used largely in his work.

■ It should be noted that we do not rest our decision in this case on appellant's contention that because A.R.S. § 23–613.-01(B) states that "employees" include all persons so classified by the Federal Internal Revenue Service, the opposite must also be true. Citing I.R.S. Revenue Ruling 70–574, 1970–2, C.B. 222, determining process servers to be independent contractors, appellants argue that the ruling must be followed and therefore an independent status is mandated. We do not agree. If the legislature had intended this result, it could

have so stated. We will not apply reasoning in the negative to make into law that which the legislature did not. Further, as we have stated, each case must be decided by its own facts and it is conceivable that under different circumstances, process servers could be employees.

■ Having gone categorically through each of the indicia regarding the right to control, and having discussed these factors in light of Arizona case law, together with the facts of this particular case, we find that the evidence in this case is entirely insufficient to support the Appeals Board decision that the process servers in this case are employees and that the commissions paid them constitute wages.

The decision of the Appeals Board is reversed.

JACOBSON and BROOKS, JJ., concur.