608 A.2d 1270

Carol KERSTEN, et al.

v.

VAN GRACK, AXELSON & WILLIAMOWSKY, P.C.

No. 1524, Sept. Term, 1991.

Court of Special Appeals of Maryland.

July 7, 1992.

Harvey Greenberg (Lori Simpson, on the brief), Towson, for appellants.

Valerie L. Tetro (Joseph F. Cunningham and Joseph F. Cunningham & Associates, on the brief), Washington, D.C., for appellee.

Argued before CATHELL, DAVIS and HARRELL, JJ.

HARRELL, Judge.

This appeal from a summary judgment proceeding in the Circuit Court for Montgomery County raises the issue of whether a law firm may be held vicariously liable for the alleged bad acts of a private process server. The circuit court (Cave, J.) ruled that appellee, Van Grack, Axelson & Williamowsky, P.C., neither possessed nor exercised that degree of control over the private process server which would give rise to vicarious liability. We find no error and affirm.

### Facts

The events leading up to this appeal are undisputed and may be summarized briefly. Appellee was retained by Charlene Baden in connection with an action brought against her by Private Mortgage Investors Trade Association (PMITA). On behalf of Baden, appellee filed a third-party complaint against appellants, Carol and Peggy Kersten and Lucille and Jeffrey Schneyer.[1] Appellee engaged Richard Alan James to serve process on appellants. James submitted purported[2] affidavits of service to appellee and to the circuit court stating that he had personally served appellants on 30 and 31 May 1987. The affidavits were false; James never personally served appellants.

---

1. Appellants were trustees and limited partners of PMITA.

2. Although each form of the return of service was arranged for the server's signature followed by a notary public's acknowledgment, only the server's signature had been executed.

Not having received notice of Baden's complaint, appellants failed to respond to it. Upon the written request of appellee, therefore, the circuit court entered an order of default against Carol Kersten and the Schneyers pursuant to Md. Rule 2–613. The circuit court notified Carol Kersten and the Schneyers that an order of default had been entered against them and that they could move to vacate the order within 30 days after its entry. Thereafter, they successfully moved to vacate the order. Judgment was ultimately entered in favor of appellants in the PMITA action.

On 5 May 1988, appellants filed the instant action against appellee, James, and Baden.[3] In their complaint, appellants alleged that, as a result of discovering they were potentially subject to a substantial default judgment, they suffered severe emotional distress. Appellants also sought to recover financial losses sustained in defending against the entry of the default order. Their complaint contained two counts, one of which charged appellee with vicarious liability for James' actions. Appellee moved for summary judgment on 29 March 1991. After hearing arguments on 29 August 1991, the circuit court granted appellee's motion for summary judgment.

Although there were a number of issues raised before the circuit court at the summary judgment hearing, the sole issue on appeal is whether liability may be imputed to appellee for the alleged bad acts of James. Appellants contend that an employer-employee relationship existed between appellee and James, such that liability may be imputed to appellee under the doctrine of *respondeat superior*. Alternatively, appellants contend that appellee may be held vicariously liable under one of the exceptions to the general rule that an employer of an independent contractor is not liable for the conduct of the contractor. We reject both contentions.

---

**3.** Fittingly, James vanished before appellants filed this action and was never personally served.

## I.

Under the doctrine of *respondeat superior*, an employer is vicariously liable for the tortious conduct of an employee when the employee is acting within the scope of the employer-employee relationship. *Brady v. Ralph Parsons Co.*, 308 Md. 486, 511, 520 A.2d 717 (1987). Converse to this doctrine is the general rule that an employer of an independent contractor is not vicariously liable for the conduct of the contractor. *Id.* at 512, 520 A.2d 717; *Rowley v. Mayor of Baltimore*, 305 Md. 456, 461, 505 A.2d 494 (1986). An independent contractor is "one who contracts to perform a certain work for another according to his own means and methods, free from control of his employer in all details connected with the performance of the work except as to its product or result." *Gale v. Greater Washington Softball Umpires Ass'n*, 19 Md.App. 481, 487, 311 A.2d 817 (1973).

> Various reasons have been advanced for it [the rule that an employer is not liable for conduct of an independent contractor], but the one most commonly accepted is that, since the employer has no right of control over the manner in which the work is to be done, it is to be regarded as the contractor's own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility for preventing the risk, and administering and distributing it.

*Rowley*, 305 Md. at 462, 505 A.2d 494, *quoting* 5 *Prosser and Keeton on the Law of Torts*, § 71 at 509 (1984).

As one might expect based upon the above rationale, the distinction between an employee and an independent contractor hinges on the right of control and supervision.

> [T]he cases list a number of subsidiary factors that may be considered, but stress the right of control and supervision retained by the employer. To put it in terms of an employer-employee relationship, the decisive test in determining whether the relation of master and servant exists is whether the employer has the *right to control and direct the servant in the performance of his work and*

*in the manner in which the work is to be done* (emphasis in original) (citations omitted).

*Gale,* 19 Md.App. at 487, 311 A.2d 817.

Other factors considered by courts in determining the existence of an employer-employee relationship include (1) the selection and engagement of the servant, (2) the payment of wages, (3) the power of dismissal, and (4) whether the work is a part of the regular business of the employer. *Keitz v. National Paving and Contracting Co.,* 214 Md. 479, 491, 134 A.2d 296, 136 A.2d, 229 (1957). These factors are relevant to the extent that the right of overall control is implicit in each. *L.M.T. Steel Products, Inc. v. Pierson,* 47 Md.App. 633, 636, 425 A.2d 242 (1981). However, "these are but *indicia* of the employment relationship—factors or criteria to look at." *Id.* at 635, 425 A.2d 242 (emphasis in original). The only test with "any special conclusive significance" is the power or right of control and supervision. *Id.*

> To have an employment relationship, the 'employer' must have some ability, should he care to exercise it, to tell the 'employee' what to do and how and when to do it. If there is not this minimal power of control—if the worker's agreement is to perform the work 'according to his own means and methods free from control of his employer in all details connected with the performance of the work except as to its product or result'—the worker is deemed to be an independent contractor and not an employee/servant.

*L.M.T. Steel Products,* 47 Md.App. at 636, 425 A.2d 242, *quoting Gale,* 19 Md.App. at 481, 311 A.2d 817. To like effect, *see Chevron, U.S.A., Inc. v. Lesch,* 319 Md. 25, 32–33, 570 A.2d 840 (1990); *Whitehead v. Safway Steel Products, Inc.,* 304 Md. 67, 78, 497 A.2d 803 (1985).

Based upon the above principles, we shall now examine the circuit court's decision in the instant case. Because we are judging the propriety of the grant of a motion for summary judgment, we must determine whether there is a genuine dispute as to any material fact and whether appellee is entitled to judgment as a matter of law. *Brady,* 308

Md. at 496, 520 A.2d 717. In determining whether any factual issues exist, we must resolve all inferences in favor of appellants. *Id.* A genuine dispute as to any material fact, or as to the inferences to be drawn from the facts, renders summary judgment improper. *Id.; Austin v. Thrifty Diversified, Inc.,* 76 Md.App. 150, 153, 543 A.2d 889 (1988).

The undisputed facts adduced by the parties regarding the terms and manner of James' employment with appellee are as follows: In May 1987, James had been serving process papers for appellee for approximately eighteen months. James was the sole process server engaged by appellee for collections matters. He served process for matters other than collections as well. James did not have a written contract with appellee. He was under no obligation to accept assignments from appellee. It was assumed, however, that he would be available to serve process for appellee. James received a flat, agreed upon fee for each assignment which he successfully completed. He was generally paid out of appellee's collections trust account. No ordinary payroll deductions were made on his checks. James maintained his own offices and made his services available to the general public. He also provided his own forms for affidavits of service and his own notary public to notarize the affidavits.

Once a week at irregular intervals, James met with someone from appellee's office to report on assignments he had successfully completed and to receive new assignments. He generally met with Katrina March, a paralegal in appellee's office who was in charge of appellee's collections. Occasionally, he also met with the attorney in charge of the matter for which he was serving process. When James met with March, she would review a copy of his affidavits of service to verify that they had been completed and signed by him. In addition, she would attempt to verify that James had served the proper person and that he had filed the affidavits in court, usually by asking James these questions directly. March would also give James the names

of persons to be served and addresses or locations where they might be found.

Based upon these facts, we find that the circuit court was correct in determining that the undisputed facts, and the reasonable inferences possible therefrom, did not demonstrate the degree of control required to establish an employer-employee relationship. James set his own hours of work and established his own work sequence. There is nothing in the record to suggest that James was subject to any instructions from appellee regarding the order in which process was to be served. Although he reported to appellee once a week at irregular intervals, the reports were only for the purpose of verifying that James had successfully completed particular assignments and giving him information necessary to carry out new assignments. *See Brady*, 308 Md. at 486, 520 A.2d 717 (rendition of reports does not establish an employer-employee relationship). The only instructions James received were whom to serve and where they might be found. Thus, there is no basis in the record for the conclusion that appellee ever dictated, or had a right to dictate, when, where or how James served process. While appellee directed James as to the product or result of his work, James was free from appellee's control as to the details and means by which that result was accomplished. In addition, appellee did not have the right to discharge James. If James failed to pick up papers to serve or to complete service, appellee's recourse was simply not to refer more business to him. *See generally Fullerton v. Arizona Dept. of Economic Security*, 135 Ariz. 360, 661 P.2d 210, 213 (Ariz.App.1983) (distinguishing right to discharge from "decision not to hire an independent contractor a second time if prior performance was not satisfactory"). In sum, the only conclusion that may be drawn from the record is that James was an independent contractor in his relationship with appellee.

We note that our conclusion in the instant case is consistent with the holdings of a number of courts in other states that have considered whether an employer-employee rela-

tionship exists under similar circumstances. *See, e.g., Fullerton*, 135 Ariz. 360, 661 P.2d at 210; *Kleeman v. Rheingold*, 148 Misc.2d 853, 562 N.Y.S.2d 915 (Sup.1990); *Bockian v. Esanu Katsky Korins*, 124 Misc.2d 607, 476 N.Y.S.2d 1009 (Sup.1984); *Becker v. Industrial Accident Commission*, 212 Cal. 526, 298 P. 979 (1931).

Appellants contend that the circuit court erred in disposing of the instant case on summary judgment because there is a genuine dispute as to the inferences to be drawn from the undisputed facts. We disagree. The Court of Appeals, reviewing the grant of a judgment n.o.v. in *Whitehead v. Safway Steel Products*, 304 Md. at 77, 497 A.2d 803, noted that "as between the parties, the inferences possible in a case are invariably contested[.]" It stressed, however, that "we have not hesitated to rule, as a matter of law, upon the employment issue." *Id.* *See also Chevron, U.S.A., Inc.*, 319 Md. at 32–33, 570 A.2d 840 (affirming summary judgment determination of whether an employer-employee relationship existed). In the instant case, some factors traditionally considered by courts in determining whether an employer-employee relationship exists are consistent with the conclusion that James was an employee. For example, appellee selected and engaged James. *Keitz*, 214 Md. at 491, 134 A.2d 296, 136 A.2d 229. This factor, however, is relevant only to the extent that it implies the right of overall control. *L.M.T. Steel Products*, 47 Md.App. at 635–36, 425 A.2d 242. The undisputed facts in the instant case, and the reasonable inferences which may be drawn therefrom, do not demonstrate the degree of control required to establish an employer-employee relationship. Accordingly, the existence of elements of the employment relationship that are consistent with the right of control does not reasonably warrant an inference that appellee possessed that degree of control over James which would give rise to vicarious liability.

Appellants devote a portion of their briefs to a discussion of *L.M.T. Steel Products*. In that case, we reviewed the propriety of a trial court's denial of a motion for judgment

n.o.v. The evidence most favorable to the appellees in that case clearly established the presence of four of the five criteria enumerated in *Keitz*. Only the exercise of control was lacking. Nevertheless, we held that whether an employer-employee relationship existed was a proper issue for the jury to resolve. Writing for this Court, Judge Wilner (now Chief Judge) relied upon the fact that the party in question, Webster, had a supervisory role in his alleged employer's operations. Given the nature of Webster's duties, Judge Wilner concluded, the failure to establish the factor of right of control was not fatal to a finding that Webster was an employee.

> A master-servant relationship does not require ... the actual exercise of minutely or hourly or even daily direct on-site supervision by the employer. Indeed, the more authority an employee has, the less likely such routine supervision will be. The president or vice-president of a company is not likely to be supervised by the board of directors in his every action, but that does not make him an independent contractor. To one degree or another, this is necessarily true with respect to all persons employed in administrative or supervisory roles.

*L.M.T. Steel Products*, 47 Md.App. at 636, 425 A.2d 242. In the instant case, James did not fill a supervisory role for appellee. Accordingly, the lack of any support in the record for the conclusion that appellee had the power or right to control James' manner or method of work is not explicable in terms of James' authority.

Appellants also contend that appellee may be vicariously liable because an agency relationship existed between appellee and James. We find this contention to be entirely without merit.

> One may be an agent of another, owing to his principal the fiduciary obligations of loyalty and general obedience, but at the same time not be sufficiently under the control of the principal to be considered a servant. The relationship of master and servant exists only when the employer has the right to control and direct the servant in the

performance of his work and in the manner in which the work is to be done.

*Chevron, U.S.A., Inc. v. Lesch,* 319 Md. at 32, 570 A.2d 840 (citations omitted). As we have already stated, the undisputed facts adduced by the parties in the instant case and the reasonable inferences therefrom do not demonstrate the degree of control required to establish an employer-employee relationship. Thus, even assuming that James was an agent of appellee, the latter cannot be held vicariously liable for James' acts.

## II.

■ We turn to appellants' contention that vicarious liability may be imposed upon appellee under either of two exceptions to the general rule that an employer is not liable for the tortious conduct of an independent contractor. These exceptions are (1) non-delegable duties of the employer, and (2) "the concept of 'the work contracted to be done.'" *Rowley v. Mayor of Baltimore,* 305 Md. 456, 475, 505 A.2d 494 (1986). We do not find either exception to be applicable in the instant case.

The statement commonly made in ... cases [imposing a non-delegable duty upon an employer] is that the employer is under a duty which he is not free to delegate to the contractor. Such a 'non-delegable duty' requires the person upon whom it is imposed to answer for it that care is exercised by anyone, even though he be an independent contractor, to whom the performance of the duty is entrusted.

*Rowley v. Mayor of Baltimore,* 305 Md. 456, 463, 505 A.2d 494 (1986), *quoting Restatement (Second) of Torts* §§ 416–429 (introductory note). Employers are liable under this exception irrespective of whether they themselves have been at fault. *Id.* Whether vicarious liability should be imposed upon an employer by application of this exception is a matter of policy. *Id.* at 467, 505 A.2d 494.

■ Appellants assert that imposition of a non-delegable duty in the instant case is necessary to protect innocent

members of the public from the actions of private process servers. Appellants rely primarily upon the Maryland Rules of Professional Conduct, which they offer as an expression of a public policy that service of process should be a non-delegable duty of attorneys. The Maryland Rules of Professional Conduct, however, are not a reflection of public policy, nor do they provide a basis upon which to impose liability.

> Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability.... [N]othing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.

*In re Criminal Investigation No. 13*, 82 Md.App. 609, 612–13, 573 A.2d 51 (1990) (citations omitted). *See* Appendix: Rules of Professional Conduct, 2 Md. Rules 497 (1992 Repl.Vol.).

Aside from the Maryland Rules of Professional Conduct, appellants offer *Rowley*, 305 Md. at 456, 505 A.2d 494, in support of their position. We find *Rowley* to be distinguishable from the instant case. In that decision, the Court of Appeals held that the City of Baltimore had a non-delegable duty to maintain the premises of the Baltimore City Convention Center in a reasonably safe condition, but that the duty did not extend to an employee of an independent contractor with respect to defects arising from the failure of the independent contractor to accomplish repairs it had undertaken to perform. The foundation on which the Court based the City's non-delegable duty in *Rowley* was the liability of a landowner for injuries received on the land. A like foundation does not exist here.

We also observe that Md.Rule 2–123 provides for service of process "by a sheriff or, except as otherwise provided in this Rule, by a competent private person, 18 years of age or

older, including an attorney of record, but not by a party to the action." The argument advanced by appellants supports the absurd notion that a law firm may be vicariously liable for the acts of a sheriff as well as a private process server. We cannot accept this notion. Under the circumstances, we are not persuaded that imposition of a non-delegable duty on appellee is warranted.

Finally, we turn to appellants' argument that appellee may be vicariously liable because the alleged injuries to appellants were caused by the work contracted to be done by James. This argument is also without merit. Appellants rely primarily upon *P., B. & W.R. Co. v. Mitchell,* 107 Md. 600, 69 A. 422 (1908), *Samuel v. Novak,* 99 Md. 558, 58 A. 19 (1904), and *Deford v. State, Use of Keyser,* 30 Md. 179 (1869). Each of these cases deals with the duty of a landlord to third persons. As the Court of Appeals observed in *Rowley,* 305 Md. at 475, 505 A.2d 494, "the concept of 'work contracted to be done' is a part of a rule of limitation of liability, and does not operate to create liability where none would otherwise exist." Thus, appellants' attempt to create liability by virtue of "the concept of 'work contracted to be done' " must fail.

JUDGMENT AFFIRMED.